IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2005

## STATE OF TENNESSEE v. TAMMY MARIE WILBURN

**Appeal from the Circuit Court for Blount County**
**No. C-15019      D. Kelly Thomas, Jr., Judge**

---

**No. E2005-01009-CCA-R3-CD - Filed February 15, 2006**

---

The defendant, Tammy Marie Wilburn, pled guilty to one count of attempted aggravated arson, a Class B felony. The Blount County Circuit Court sentenced her to an eight-year sentence as a Range I, standard offender to be served in the Department of Correction. The defendant appeals, contending the trial court erred in denying her alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal); Raymond Mack Garner, District Public Defender; and Stacey D. Nordquist, Assistant Public Defender (at trial), for the appellant, Tammy Marie Wilburn.

Paul G. Summers, Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Michael A. Gallegos, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's setting fire to her rental house. The defendant was indicted for aggravated arson, but she pled guilty to attempted aggravated arson with the sentence to be determined by the trial court. After a sentencing hearing, the trial court denied the defendant alternative sentencing and ordered her to serve the eight-year sentence as a Range I, standard offender in confinement.

At the sentencing hearing, the state presented the following account of the arson committed on April 18, 2004.

The facts would have come out to the Court that [the defendant] was angry with her son, Josh. And Josh and [the defendant] were in the kitchen arguing. And she became angry at him and would have -- I think she flipped a table over and there was a candle on the table. And a fire started in the kitchen. And she did nothing to put the fire out. Josh began to suppress the fire. Well, [the defendant's] actions following that were, she saw some lighter fluid and she went into the living room and she began to spread the charcoal fluid into the living room area to start that portion of the house on fire.

[The defendant] -- Josh places himself, when she does the living room action, on the stoop. That's where he puts himself. However, it's our belief that he would have been present in the house. But in any event, Your Honor, [the defendant] believed at the time that she was doing this action in the living room that Josh was in the kitchen. And therefore we have this intent to commit aggravated arson. Of course, she can't if he's not contained therein, but she was attempting to do it.

The defendant testified that she was thirty-six years old and a divorced mother of two sons. She said she dropped out of high school in the tenth grade because she was pregnant. She said she supported herself by working as a private nursing assistant for the elderly and then as a waitress for about fifteen years. She said she had psychological problems for five to six years. She said that about one year before this offense, she had been physically abused and had a nervous breakdown. She said her doctor sent her to Lakeshore Mental Health Institute for seven days in 2003. She said a doctor diagnosed her with bipolar depression, and she was taking five different medications for seizures, migraines, sleeping, and anxiety attacks. She said that she had been on medication for two years and that it was working well at the time she testified. She acknowledged she had been convicted of two DUIs and two or three driving on revoked licenses but never any violent offenses before the arson.

The defendant testified that at the time of the arson, she was living with her two sons at a rental house on 1804 Kittrell Avenue. She said she was not working at the time of the arson because she was unable to hold down a job. She said she was on antidepressants that reacted with her other medications causing her to be nervous and depressed. She said she had been out of the hospital and not in her "right mind" for over a year when she committed the arson. She said that she did not take the antidepressants anymore and that she did not know what she was doing when she set the fire because she had blacked out. She said she and her son, who was six feet tall and weighed 180 pounds, got into a fight in the kitchen. She said that they knocked the table over with candles on it but that it did not catch anything on fire. She said she then took a can of lighter fluid, poured it on her living room furniture, and lit it on fire. She said she gained nothing financially from setting the fire and lost all of her possessions.

The defendant testified that since she got out of jail on this charge, she had been seeing a doctor at Cherokee Health System every four weeks. She said that since she stopped taking the antidepressants, she had been able to cope with daily activities, work two jobs, work on a new home, and take care of herself and one of her sons. She said she was working as a nanny for three children and training to be a server at a restaurant. She said she planned to enroll in a parenting class and did so during one of the trial court's recesses.

On cross-examination, the defendant acknowledged being convicted of criminal impersonation and possession of drug paraphernalia. She acknowledged that while on bond for those charges, she was arrested for driving under the influence and possession of marijuana in 1996, but was only convicted of the DUI. She acknowledged that she was arrested for a second DUI in 1997 while on probation for the prior DUI. She acknowledged that she was arrested for driving on a revoked license in 1998 while on probation for the second DUI. She acknowledged being charged with and convicted of two more offenses for driving on a revoked license while on probation in 1999 and 2000. She admitted that she was arrested for solicitation to possess drug paraphernalia while on bond for the present offense. She explained she was pulled over and had a marijuana pipe in her purse that she had taken away from her son. She admitted she had used marijuana in the past. She acknowledged she had been under a doctor's treatment and taking the medications as prescribed at the time she committed the offense. She acknowledged her doctor changed her antidepressant medication in March 2004 and stated her negative reaction to the medicine did not surface until after she visited her doctor in April. She acknowledged that her medical record from April 8, 2004, ten days before the arson, states she went in for a medication check and reported no complaints and an improved mood.

The defendant testified that she was not mad at her son but was mad at herself, "That was my anger coming out." She said she did not remember telling officers her son was in the kitchen when she started the fire. She admitted she did not remember her son was on the porch until after she spoke with her attorney several weeks after the fire. She acknowledged living in two different trailers in 2001 and both of the trailers burning down. She explained one burned down because of an improperly installed water heater and the other burned down a week after she was evicted. She denied threatening to burn down the second trailer.

Clara Wilburn, the defendant's mother, testified that she was outside when she heard the defendant and the defendant's son arguing. She said the defendant's son came outside and was talking to Ms. Wilburn when she noticed flames in the window. She said the defendant was crying a lot and deeply depressed around the time of the fire. She said that since the fire, the defendant's medications have been changed, the defendant seemed to be doing better, and the defendant was able to hold down a job. She said one of the defendant's sons was a ward of the state because the defendant could not handle him. She said that a year or two ago the defendant was unable to take care of the defendant's children and that she took care of them for a few months. She said that when she visited the defendant in jail, the defendant did not remember anything about the fire. She said that the defendant was going to Cherokee for treatment around the time of the fire and that she was still going to Cherokee at the time of the sentencing hearing. When asked why the court should

-3-

believe this situation would not happen again, Ms. Wilbrun said, "I don't know sir. I just hope it don't." She said the defendant was a lot different than she was when she started the fire.

The presentence report states that the defendant had three prior convictions for driving on a revoked license, two prior convictions for driving under the influence, one conviction for solicitation to possess drug paraphernalia, two convictions for driving while license was suspended, one conviction for possession of drug paraphernalia, and one conviction for criminal impersonation. The report states she began drinking at age thirteen or fourteen and drank until age thirty-five. The report also states the defendant began using marijuana two to three times per week when she was sixteen or seventeen until 2003, when she was in her mid-thirties. The report states the defendant suffered from bipolar disorder, depression, nerves, asthma, seizures, migraines, anxiety, panic attacks, and insomnia. The report states the defendant reported working as a server in various restaurants from 1999 to 2004.

After argument by counsel, the trial court denied alternative sentencing. The trial court examined the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 and found the following enhancement factors applied: (2) the defendant had a previous history of misdemeanor criminal convictions and the criminal behavior of illegal drug use; (9) the defendant's previous unwillingness to comply with the conditions involved in community release; and (11) the defendant had no hesitation committing the offense when the risk to human life was high, because the defendant's son and mother were on the porch. See § 40-35-114 (2003).[1] The trial court found the defendant did not have any prior felony convictions and imposed the minimum sentence. In denying probation and alternative sentencing, the trial court stated:

> I've considered probation, split confinement, Community Corrections. You are being treated in the community, but I think back during this time you were not being successfully and safely treated in the community, which has to be an underlying assumption of release. In fact, the exhibit shows that you were keeping monthly appointments with your doctors . . . The likelihood of rehabilitation, I've considered that. And in that regard, I've looked at all the times you've violated your probation and been rearrested while on probation. And all this kind of stuff builds up.
>
> You even committed a minor offense while you were on bond for this, a very hugely serious crime. So, certainly that shows not a good likelihood of rehabilitation . . . .

[1]We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -303, -401 and 40-36-106. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 7, 8, 17. However, the amended code sections are inapplicable to the defendant's appeal.

This is an extraordinarily serious offense that put you, the people around there, and the emergency personnel at risk. Not to have confinement for someone who just willfully sets things on fire like that with people around, I think, would hugely depreciate the seriousness of this offense.

On appeal, the defendant claims the trial court erred in denying her alternative sentencing. Specifically, the defendant claims she proved her suitability for the Community Corrections program under the special needs provision of Tennessee Code Annotated section 40-36-106(c). The defendant asserts the trial court failed to apply the following mitigating factors: (2) that she "acted under strong provocation," (8) that her mental and physical problems "significantly reduced [her] culpability for the offense," and (11) that she "committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." See T.C.A. § 40-35-113. The defendant asserts her previous criminal convictions occurred in separate short periods of time. The defendant asserts there was nothing "especially egregious" about her offense that would require incarceration to avoid depreciating the seriousness of the offense. The defendant also asserts that her mental health has improved since she was released from jail and her medications were adjusted.

The state contends that the trial court properly denied alternative sentencing. The state asserts the defendant is not entitled to a presumption of alternative sentencing because she was convicted of a Class B felony. The state asserts the defendant was not eligible for Community Corrections because attempted aggravated arson is a violent offense. The state asserts the defendant failed to establish that she was a suitable candidate for Community Corrections under the special needs provision. The state contends the defendant did not act under strong provocation because the fight between the defendant and her son was not out of the ordinary and had ended before the defendant started the fire. The state asserts the defendant failed to show that her mental capacity mitigated the offense because a medical report from ten days before the fire shows the defendant had no complaints, an improved mood, and decreased anxiety. The state asserts the defendant failed to offer any medical testimony regarding her mental incapacities. The state contends the defendant had a history of criminal convictions and illegal drug use and a history of unwillingness to comply with conditions involved in release in the community.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d) (2003), Sentencing Commission Comments. This means if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to

-5-

sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider if (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)).  The trial court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114.  T.C.A. § 40-35-210(b)(5) (2003); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).  In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438.

The presumption of favorable candidacy for alternative sentencing extends to a defendant "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony." T.C.A. § 40-35-102(6) (2003).  When the defendant is presumed to be an eligible candidate, the state can overcome the presumption with "evidence to the contrary." Id.   Because the defendant was convicted of a Class B felony, she is not presumed to be a favorable candidate for alternative sentencing.  See id.  Therefore, the state had no burden to justify confinement in this case.  State v. Beverly Dixon, No. W2004-00194-CCA-R3-CD, Shelby County, slip op. at 8 (Tenn. Crim. App. June 30, 2005), app. denied (Tenn. Dec. 5, 2005) (citing State v. Joshua L. Webster, No. E1999-02203-CCA-R3-CD, Blount County, slip op. at 3 (Tenn. Crim. App. Dec.4, 2000)).

In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); see Ashby, 823 S.W.2d at 168.

A defendant can be eligible for Community Corrections under Tennessee Code Annotated section 40-36-106(a) if the defendant meets all the criteria set out in the section.  See T.C.A. § 40-36-106 (2003).  The defendant in this case would not be eligible under section (a) because she was convicted of a violent felony offense.  See T.C.A. § 40-35-120(b)(1)(G). Tennessee Code Annotated section 40-36-106(c) provides that defendants who are not eligible for Community Corrections under subsection (a) and "who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community" may be eligible for Community Corrections.  This court construed the words "who would be usually considered unfit for probation" to mean that a defendant must be otherwise eligible for probation under the sentencing act in order to be eligible for placement in the Community Corrections Program.  State v. Staten, 787 S.W.2d 934, 936-37 (Tenn. Crim. App.

1989).  The defendant is eligible for probation because she received an eight-year sentence.  See T.C.A. 40-35-303(a) (2003).

When a defendant is eligible for Community Corrections under subsection (c), the court must consider the following factors to determine if the defendant is suitable for the program

> (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems, (2) these factors were reasonably related to and contributed to the offender's criminal conduct, (3) the identifiable special need (or needs) are treatable, and (4) the treatment of the special need could be served best in the community rather than in a correctional institution.

State v. Boston, 938 S.W.2d 435, 439 (Tenn. Crim. App. 1996).

The trial court stated "the mitigating factors are not a whole lot."  The trial court did not apply three factors that the defendant contends were applicable.  See T.C.A. § 40-35-113(2), (8), (11).  First, the defendant testified that lighting the fire in the living room had nothing to do with her son and that after their fight in the kitchen, the defendant left the kitchen, went into the living room, and set it on fire.  The record does not show that the defendant was under strong provocation.  Second, the record shows that Dr. Michael F. Smith, the defendant's psychiatrist, met with the defendant ten days before she committed the offense and his notes reflect that the defendant had no complaints about her medications, that her mood had improved, that she was tolerating her medications well, and that she denied any thoughts of wanting to harm herself or others.  The record does not show that the defendant's mental problems "significantly reduced her culpability."  Thirdly, the defendant's mother testified that it was "typical" for the defendant and the defendant's son to argue, thus the defendant was not under unusual circumstances when she committed the offense.  The trial court's findings that these mitigating factors did not apply are supported by the record.

The trial court found that the special needs provision for Community Corrections did not apply in this case.  The record reflects that the defendant had a history of mental health problems and drug and alcohol abuse.  It is likely the defendant's mental health problems contributed to the defendant's criminal conduct, but no medical proof was provided to that effect. Additionally, it is questionable if the defendant's special needs are treatable or if the treatment of the special needs could best be served in the community.  No experts testified that the defendant's treatment could be successful in the community.  The evidence offered at the sentencing hearing showed the defendant was under treatment in the community when she committed the offense.  Therefore, we conclude the defendant did not show herself to be qualified for Community Corrections under the special needs provision.

The trial court found incarceration was appropriate in this case.  The record reflects that the defendant had been convicted of multiple offenses, many of which were committed while the defendant was on bond or probation for other offenses.  It also reflects that this was a serious crime

endangering the defendant's son and mother who were standing on the porch and resulting in significant loss to the owner of the home. We conclude the defendant has failed to show the sentence was improper. We affirm the judgment of the trial court.


_____
JOSEPH M. TIPTON, JUDGE